Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4832 | DATE | October 24, 2002 |
| CASE TITLE | | Durkin v. Equifax | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiffs' and the Class' Motion for Partial Summary Judgment (doc. #63-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs'/The Class' motion for partial summary judgment (doc. #63-1) is GRANTED. Status hearing set for November 20, 2002, at 9:15 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 28 2002 date docketed | |
| ✓ | Docketing to mail notices. | | CJ docketing deputy initials | 78 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| JHC | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
OCT 28 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL DURKIN AND LORETTA REED, )
individually and on behalf of all others )
similarly situated, )
                    Plaintiffs, )
) NO. 00 C 4832
v. )
) JUDGE WILLIAM J. HIBBLER
EQUIFAX CHECK SERVICES, INC., n/k/a )
CERTEGY CHECK SERVICES, INC., )
a Delaware corporation, )
                    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, on behalf of themselves and a class certified by this Court on February 12, 2001, brought suit against Defendant Equifax Check Services, Inc., n/k/a Certegy Check Services, Inc., f/k/a Telecredit Service Corp. ("Equifax"), for alleged violations of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Plaintiffs and the Class now move for partial summary judgment on the issue of whether Equifax is a "debt collector" as defined in § 1692a(6) of the FDCPA. For the following reasons, the Court finds Equifax indeed fits within the statutory definition, and thus GRANTS Plaintiffs' and the Class' motion for partial summary judgment.

## BACKGROUND

During the relevant time period in this case, Equifax offered check authorization/warranty services to merchants who accepted checks from their customers. The customer submitted a check to the merchant, who in turn electronically contacted Equifax's computer seeking authorization. Equifax would then respond to accept or decline the check. Equifax agreed to purchase for face value certain dishonored checks that it had authorized. Once Equifax acquired those checks, it sent a series of collection letters to the customer demanding payment of the check's face value plus a service charge. Equifax attempted to collect on 1.6 million dishonored checks in 1999, and 2 million dishonored checks in 2000.

Between late 1999 and early 2001, Plaintiffs each received a series of materially identical collection letters from Equifax concerning dishonored checks they had allegedly written, that Equifax had subsequently purchased from merchants pursuant to a written check authorization/warranty service agreement. (Pls.' Local Rule 56.1(a)(3) Statement, Exs. F, G). Plaintiffs contend the contents of those letters violated provisions of the FDCPA. Previously, this Court declined to decide this matter on the parties' cross-motions for summary judgment. *Durkin v. Equifax Check Services, Inc.*, 2001 U.S. Dist. LEXIS 15474 (N.D. Ill. Sep. 27, 2001). Currently pending before the Court is Plaintiffs' motion for partial summary judgment on the issue of whether Equifax is a "debt collector" as defined by the FDCPA.

## ANALYSIS

Summary judgment is proper only where the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because the essential facts here are undisputed, and the only issue raised is a question of law as to the "interpretation of a statute and its application to the facts of the case," it is appropriate to resolve this matter on summary judgment. *See Beckman Instr., Inc. v. Coleman Instr., Inc.*, 338 F.2d 573, 577 (7th Cir. 1964).

Congress enacted the FDCPA to, inter alia, "eliminate abusive debt collection practices by debt collectors." 15 U.S.C.§ 1692(e). The FDCPA thus imposes legal obligations only on "debt collectors," which the statute defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . ." 15 U.S.C. § 1692a(6). *See also Aubert v. American Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection. . . are not subject to the [FDCPA]"). Plaintiffs argue that Equifax fits within definition of "debt collector" because it regularly collects debts owed another. Equifax, however, disputes two components of this assertion:

(1) that it regularly collects debts; or (2) that it collects debts owed another.

## A. Equifax Regularly Collects Debts

First, regularity of debt collection depends on sheer volume. *Scott v. Jones*, 864 F.2d 314, 316 (4th Cir. 1992). "If the volume of a person's debt collection services is great enough, it is irrelevant that the services only amount to a small fraction of his total business activity." *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997) (attorney who collected debts from 639 individuals over 9 months regularly collected debts, even though collection efforts accounted for just 0.5% of his overall practice). That is not to say the percentage of time spent collecting debts is completely irrelevant when analyzing if a business regularly collects debts. *See e.g., Winterstein v. Crosscheck*, 149 F. Supp. 2d 466, 472 (N.D. Ill. 2001) (denying company's summary judgment motion because a genuine issue existed as to whether it regularly collected debts where it allocated just 7% of employees and 6% of expenses to that task but spent over $2 million yearly on the attempted collection of over 2000 dishonored checks); *Hartl v. Presbrey & Assoc.* No. 95C4728, 1996 WL 529339, at *3 (N.D. Ill. Sep. 16, 1996) (law firm did not regularly collect debts where collection activities comprised less than 1% of its overall practice and yearly earnings).

While the evidence of record reflects that Equifax attempted collection on less than 1% of the checks it processed for authorization in 1999 and 2000, this percentage amounts to 3.6 million attempts over a two year period, for an average of over 4900 per day. That volume is certainly great enough to demonstrate that notwithstanding the minimal percentage in relation to the number of processed checks, Equifax regularly engages in debt collection. Indeed, another court reached the same conclusion in a case involving Equifax's predecessor in interest. *See Holmes v. Telecredit Serv. Corp.*, 736 F. Supp. 1289, 1291 (D. Del. 1990). Moreover, in two recent cases where Equifax's status as a debt collector was at issue, the company conceded that it regularly collected debts. *See Ballard v. Equifax Check Services*, 27 F. Supp. 2d 1201, 1204-05 (E.D. Cal. 1998); *Ransom v. Telecredit Service Corp.*, No. H-91897, 1992 U.S. LEXIS 22738, at *16 n.5 (D. Md. Feb. 5, 1992).

### B. Equifax Collects Debts Owed Another

Third-party collectors that purchase debts after default and attempt collection on those debts do collect debts owed another. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480, 1485 (M.D. Ala. 1987); *Holmes*, 736 F. Supp. at 1292-93; *Ballard*, 27 F. Supp. 2d at 1205; *Ransom*, 1992 LEXIS 22738, at *15. "[A]n assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of the assignment; conversely, an assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned." *Pollice*, 225 F.3d at 403. The Seventh Circuit implicitly supported this reasoning when it held that a company who acquired debts before, and not after, default was not a debt collector. *See Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958-59 (7th Cir. 1997). True, Equifax cites to one court that purports to hold otherwise, *Alexander v. Moore & Associates, Inc.*, 553 F. Supp. 948 (D. Hawaii 1982), but that decision predates the others, and in fact was explicitly rejected by them, has not been subsequently followed, and gives comparatively little reasoning to support the result reached.

*Holmes*, *Ballard* and *Ransom*, with *Kimber* as a foundation, previously found that the very same defendant in this case, Equifax, collected debts owed another and was a debt collector as defined by the FDCPA. *Ransom* notes that the statute uses the words "owed" in the past tense and "due" in the present tense. 1992 LEXIS 22738, at *17. If Congress had intended to exclude from the FDCPA purchasers of debts in default, it could have relied exclusively on the word "due" and eliminated the word "owed." The use of those particular words thus evinces an intent to include "those who collect debts currently 'due' to others and . . . those who collect debts formerly 'owed' to others." *Id.* It is undisputed that Equifax purchased dishonored checks, debts already in default, from its merchants, for the specific purpose of collecting those debts owed another.

Equifax's argument that it is a creditor, not a debtor, does not persuades this Court to depart from

-4-

the *Holmes-Ballard-Ransom* trilogy. The FDCPA excludes creditors from its regulations, *see* 15 U.S.C. §1692a(6)(A), a term defined as meaning "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another," § 1692a(4). Equifax may be a person to whom a debt is owed, but only as the result of other merchants assigning it a debt already in default pursuant to a contract for check authorization/warranty services. Despite Equifax's contrary assertion, its purchase of merchant debts directly facilitates collection of such debt for another. Indeed, merchants contract with Equifax for exactly that purpose. *Holmes*, 736 F. Supp. at 1293. Equifax falls squarely into the assignee exception, and therefore is not a creditor. *Holmes*, 736 F. Supp. at 1292 (citing *Kimber*, 668 F. Supp. at 1485); *Ransom*, 1992 LEXIS 22738, at *19-21.

## CONCLUSION

Plaintiffs have sustained their burden of demonstrating that Equifax is a "debt collector" under the FDCPA. Accordingly, the Court grants their motion for partial summary judgment.

IT IS SO ORDERED.

WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: October 24, 2002