

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4832 | **DATE** | 3/31/2004 |
| **CASE TITLE** | DURKIN, et al. vs. EQUIFAX CHECK SERVICES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Equifax's Motion for Summary Judgment (doc. #88)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant Equifax's motion for summary judgment [#88] is GRANTED. Enter Memorandum Opinion and Order. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 31 2004 date docketed | |
| ✓ | Docketing to mail notices. | | 95 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC courtroom deputy's initials | | 2004 MAR 31 PM 4:34 U.S. DISTRICT COURT CLERK  date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL DURKIN and LORETTA REED, )
individually, and on behalf of all others )
similarly situated, )
)
                                              )     Case No. 00 C 4832
              Plaintiffs, )
                                              )     Judge William J. Hibbler
v. )
)
)
EQUIFAX CHECK SERVICES, INC., )
)
              Defendant. )

MAR 3 1 2004

MEMORANDUM OPINION AND ORDER

      Plaintiffs, Loretta Reed and Michael Durkin, on behalf of themselves and a class certified by this Court on February 12, 2001 (collectively, "Plaintiffs"), brought suit against Defendant, Equifax Check Services, Inc. ("Equifax"), for alleged violations of § 1692e, § 1692f, and § 1692g of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Equifax now moves for summary judgment.

I.     BACKGROUND

      Equifax is a debt collector under the FDCPA. *See Durkin v. Equifax Check Serv.s, Inc.*, No. 00 C 4832, 2002 WL 31426397 (N.D. Ill. Oct. 28, 2002) ("*Durkin 2002*"). Equifax purchases dishonored checks from merchants and contacts the check's maker through a series of collection letters demanding full payment. The FDCPA requires debt collectors to provide a written notice including the amount of the debt, the creditor's name, and a statement that the debtor has thirty days to dispute the debt. 15 U.S.C. §§ 1692-1692o. In this case, Equifax sent an initial letter on April

95

10, 2000, a "dunning letter" or "collection letter," notifying class members of their outstanding debt and their right to challenge that debt within thirty days. This letter stated, in pertinent part:

> Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we will assume that it is valid. If you do dispute it, and you notify us in writing to that effect, we will, as required by law, obtain and mail to you proof of the debt. And if within the same period, you request in writing the name and address of the merchant to whom your check was written, we will provide you with that information too. . . . The law does not require us to wait until the end of the 30-day period before taking action to collect this debt. If, however, you request proof of the debt or the name and address of the merchant to whom you wrote your check within the 30-day period that begins with your receipt of this letter, the law requires us to suspend our efforts to collect the debt until we mail the requested information to you . . .

Equifax then sent two additional letters requesting payment in full on the debt. These follow-up letters did not include information about the debtors' thirty-day right to dispute the debt. The first additional letter, on April 24, 2000, stated, in relevant part:

> Despite a previous written notice, you have failed to make full restitution on your $217.45 dishonored check written to Funco, Inc. nearly 5 weeks ago. Your check was returned as a dishonored item and has been assigned to our Collection department to determine an appropriate action by Equifax Check Services, Inc. ("ECS") that will result in payment of this check.
>
> Should you fail to pay for this dishonored check or contact this office to make arrangements, steps will be taken to determine if your check will be assigned to an investigator or to a collection agency.
>
> You can stop this process by sending your payment in full, including the service charge referenced below, to ECS. . . .
>
> CONTINUED REFUSAL TO HONOR THIS RETURNED CHECK WILL RESULT IN YOUR CREDIT FILE BEING IMPACTED WITH A NEGATIVE REFERENCE WHICH MAY IMPACT FUTURE CREDIT GRANTING DECISIONS.

The third, and final, letter, sent May 8, 2000, stated:

> Equifax Check Services, Inc. has previously sent you letters requesting restitution for your dishonored check that we purchased from Funco Inc. Despite repeated requests

and notifications regarding your unpaid check, you have seemingly elected to ignore your original obligation. Rather than continue to send requests that go unanswered, we have elected to proceed further with more extensive collection efforts. Should you continue to refuse to honor your obligation, we will furnish information on your dishonored check to a national credit bureau. The credit information may be retained on your record up to seven years... You may reach our offices at the number below if you wish to discuss this matter further.

Section 1692g of the FDCPA requires the debt collector to provide written notice to the debtor that he or she has thirty-days within which to request, in writing, proof of the debt's validity. Plaintiffs claim that while the first letter met the FDCPA standards, the follow-up letters, containing demands for payment without mentioning the thirty-day period, overshadowed this information, in violation of the FDCPA. Plaintiffs also claim that Equifax violated § 1692e of the FDCPA by engaging in false, deceptive and misleading misrepresentations by implying that Plaintiffs' debts had not yet been referred to a debt collector when it stated that the debts had not yet been referred to a collection agency. Finally, § 1692f prohibits a debt collector from using unfair or unconscionable means to attempt to collect a debt. Plaintiffs claim that Equifax's practices of including language in the second and third letters requesting that Plaintiffs contact it by telephone, but not explaining that challenges to the debt's validity must be in writing, constituted unfair collection practices.

Before the close of discovery, the Court considered and denied the parties' cross motions for summary judgment. *Durkin v. Equifax Check Serv.s, Inc.*, No. 00 C 4832, 2001 WL 1155254 (N.D. Ill. Sept. 28, 2001) ("*Durkin 2001*"). In *Durkin 2001*, both parties offered conflicting expert testimony regarding whether the letters could confuse unsophisticated consumers such as Plaintiffs. The Court held that this factual dispute precluded entry of summary judgment in either party's favor.

On January 21, 2003, however, the Court granted Equifax's motion to bar Plaintiffs' sole expert witness. *See Durkin v. Equifax Check Serv.s, Inc.*, No. 00 C 4832 (N.D. Ill. Jan. 21, 2003)

(Unpublished Order). Nine months later, Equifax moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), relying on *Walker v. Nat'l Recovery, Inc.*, in which the Seventh Circuit noted that if the plaintiff "decides to stand on her complaint and forego factual development, then the case may come to an end by judgment on the pleadings under Fed. R. Civ. P. 12(c)." 200 F.3d 500, 503 (7th Cir. 1999). The Court denied the motion because 12(c) is only appropriate in the rare case where the plaintiff actually states that he intends to base his entire argument on the pleadings alone. *Durkin v. Equifax Check Serv.s, Inc.*, No. 00 C 4832, 2003 WL 22078331 (N.D. Ill. Sept. 8, 2003) ("*Durkin 2003*"). Plaintiffs made no such affirmative statements and retained the ability to come up with new evidence before trial. The Court held that, "once the plaintiff is able to successfully state a claim, the Court must give the plaintiff the opportunity to present evidence in support of that claim. If it turns out that the evidence is wholly one-sided, then it is possible to end the case by summary judgment under rule 56, but not under rule 12(c)." *Durkin 2003* at * 7.

Because the Court dismissed the motion on procedural grounds, the Court did not reach the question of whether Plaintiffs could prevail by relying on the collection letters alone, or, instead, whether they must provide additional extrinsic evidence to survive summary judgment.[1] At the end of discovery, Plaintiffs have submitted no other evidence but the collection letters and the testimony

---

[1] In *Durkin 2003*, the Court stated: "This is not to say that Defendant is without a procedural device to end the litigation short of trial. Defendant is free to file another motion for summary judgment, which would require the Plaintiffs to come forward with proof outside the pleadings, such as extrinsic evidence of confusion. *Walker v. National Recovery, Inc.*, 200 F.3d 500, 504 (7th Cir. 1999). If Plaintiffs fail to present evidence to substantiate their confusion claim in response to such a motion, the Court will then deal with the important questions raised by the parties' briefs of whether extrinsic evidence is in fact necessary to sustain Plaintiffs' FDCPA claims."

4

of the two named plaintiffs. Equifax filed the instant motion for summary judgment, asking the Court to dismiss Plaintiffs' claims for their failure to provide evidence sufficient to create a genuine issue of material fact under Federal Rule of Civil Procedure 56.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, and other materials in the record show that there is no disputed issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted when the record as a whole shows that a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003). The opposing party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000).

## III. ANALYSIS

Under the FDCPA notice requirement, the debt collector is required to inform debtors at the outset that they have thirty days to dispute the validity of the debt and to make disclosures about the debtor's rights and options. The Seventh Circuit has adopted an "unsophisticated consumer" standard to determine whether there have been violations of the FDCPA. *See, e.g., Gammon v. GC Serv.s Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994) (standard applies to § 1692e claims); *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (standard applies to § 1692g claims); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003) (standard

5

applies to § 1692f claims). The hypothetical unsophisticated consumer is not "the very last rung on the sophistication ladder;" rather, "the uneducated debtor possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Pettit*, 211 F.3d at 1060. The standard of an unsophisticated debtor is an objective standard. *Id.* at 1063. The Seventh Circuit selected the unsophisticated debtor standard over the least sophisticated debtor standard in order to preserve a quotient of reasonableness. *Id.* The standard is designed to "shield complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Gammon*, 27 F.3d at 1257.

### A. Evidentiary Standard for FDCPA Claims: Plaintiffs' Lack of Extrinsic Evidence

In support of its motion for summary judgment, Equifax argues that the Seventh Circuit requires FDCPA plaintiffs to substantiate their claims with extrinsic evidence. Equifax claims that Plaintiffs have failed to carry this evidentiary burden since their expert witness was barred, and Plaintiffs have provided no additional evidence since then. Plaintiffs dispute the contention that the Seventh Circuit always requires extrinsic evidence and argues that such evidence is not required in this case. While extrinsic evidence is not required in all cases, it is required where the letters do not violate the FDCPA as a matter of law, but might violate it as a matter of fact.

The Court's decision to bar Plaintiffs' expert witness left Plaintiffs with no extrinsic evidence besides the collection letters themselves. Plaintiffs had ample time to produce additional evidence, and the Court gave them even more time when it denied Equifax's 12 (c) motion. Nevertheless, Plaintiffs chose not to provide any additional extrinsic evidence. Plaintiffs claim they can fulfill their

6

evidentiary burden by relying on the testimony of Equifax's expert witness, who acknowledged in his deposition the possibility that Equifax's dunning letters might confuse. The Court disagrees. The mere possibility that someone might be confused by the dunning letters does not raise a genuine issue of material fact that the class of unsophisticated consumers receiving Equifax's letters may be confused by them.

If a violation of the FDCPA does not exist on the face of Equifax's letters, Plaintiffs cannot avoid the requirement of producing extrinsic evidence to prove that Equifax violated the FDCPA. The Seventh Circuit has held that if there is no violation on the face of the letters, the plaintiff may not rely solely on the letters and self-serving testimony to prove confusion. *Pettit*, 211 F.3d at 1061-62 ("Pettit cannot prevail because at the summary judgment stage of a case she must do more than merely speculate about how a naive debtor would interpret the letter. . . . the self-serving opinion of the plaintiff, clearly not an expert or an objective observer, does not create a genuine issue for trial.") *See also Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1997) ("if all Plaintiffs have to go on is the language of these letters, they must lose in the end.") To allow a plaintiff to prevail based on testimony of her own subjective belief and nothing more would counteract the objectively reasonably standard. *Pettit*, 211 F.3d at 1062-63.

The Seventh Circuit has provided some guidance as to the level of evidence sufficient to survive a motion for summary judgment. The court in *Walker* made recommendations for how a plaintiff could demonstrate that unsophisticated readers would be confused by the letter, such as through the use of surveys of individuals that are representative of unsophisticated consumers. 200 F.3d at 503. As surveys can be expensive, other forms of extrinsic evidence may also be sufficient to show confusion. *Johnson*, 169 F.3d at 1061. This evidence may include specific and reliable

expert testimony or general statistical evidence. This minimum evidentiary standard serves to protect debt collectors and courts from frivolous lawsuits. Plaintiffs could have offered statistics of the number of confusion-based calls Equifax received in response to the letters, or expert testimony specifically regarding how the language in the additional dunning letters increased Plaintiffs' confusion. Plaintiffs, however, have offered no additional evidence other than the letters themselves.

### B. Count I: Section 1692g of the FDCPA

The Seventh Circuit has interpreted § 1692g as prohibiting confusing letters which might confuse debtors as to their thirty-day right to dispute the validity of the debt. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). In *Bartlett*, the Seventh Circuit held that: "The statute does not say in so many words that the disclosures required by it must be in a non-confusing manner. But the courts, our own included, have held, plausibly enough, that it is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Id.* Plaintiffs, however, have not shown that Equifax's letters were confusing as a matter of law. Nor have they provided any extrinsic evidence that would enable them to survive summary judgment on this Count.

In *Bartlett*, the court also provided "safe harbor" language which debt collectors could use to ensure that the letters they send comply with the § 1692g of the FDCPA. The sample language provides the debtor with an explanation of how his rights under the FDCPA fit together with the debt collector's right to resort to legal action before the thirty days expire. The court explained that "debt collectors who want to avoid suits by disgruntled debtors standing on their statutory rights would be well advised to stick close to the form that we have drafted. It will be a safe haven for them, at least

8

in the Seventh Circuit." *Bartlett*, 128 F.3d at 502.

In *Bartlett*, the Seventh Circuit concluded that if a letter is confusing to judges, then the letter must be "confusing on its face" because a typical unsophisticated consumer will have a much poorer understanding of financial matters than a judge. *See Bartlett*, 128 F.3d at 500-501 (the court could not doubt that the letter was confusing because "we found it so, and do not like to think of ourselves as your average unsophisticated consumer.") The court also listed other possible elements of dunning letters that may lead the court to conclude that the letters are confusing on their face, including: (1) internal contradictions within the text of the letters; (2) overshadowing language that contradicts or overshadows the statutory notice; or (3) the "failure to explain an apparent though not actual contradiction." *Id.* at 501. Two Seventh Circuit decisions have relied on such factors to conclude that the letters at issue were confusing as a matter of law. *See, e.g., Avila v. Rubin*, 84 F.3d 222, 225 (7th Cir. 1996) (holding that evidence of consumer confusion was not required because the dunning letter contained internally "inconsistent and contradictory language" that was "akin to a literally false statement"); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (holding that "the contradictions in the letter, as in *Avila*, would leave an unsophisticated consumer confused as to what his rights are and therefore violate the FDCPA.") When a letter is "confusing on its face," the Seventh Circuit has deemed the letter confusing without requiring extrinsic evidence. *Id.*

In an earlier opinion denying summary judgment to Plaintiffs, the Court held that the letters at issue are not confusing as a matter of law. *See Durkin 2001*. Plaintiffs again assert that while the initial notification letter sent by Equifax did not violate the FDCPA and followed the safe harbor provision in *Bartlett*, the second and third letters overshadowed the initial notification and thus were

9

confusing to the unsophisticated consumer as a matter of law, or at least ambiguous enough to withstand summary judgment.[2] Plaintiffs claim that the language in Equifax's second and third letters overshadowed the rights spelled out in the first notice by: (1) overshadowing the notice of the thirty-day statutory rights period by mentioning Plaintiffs' "continued refusal to honor" the check; (2) implying that the thirty-day time period in which to dispute the debt had expired; and (3) failing to provide an explanation of how the thirty-day time frame and the messages in the second and third letter "fit together."

Although this Court does not condone Equifax's tactics, there is no legal basis upon which to grant Plaintiffs judgment as a matter of law. Most of the cases to which Plaintiffs cite are factually inapposite. For example, although the court in *Farley v. Diversified Collection Serv.s, Inc.*, granted the plaintiffs' motion for summary judgment; in that case, the debt collector's demand for immediate payment was juxtaposed, in the same letter, with the thirty-day statutory notice requirement, without further explanation of how the two statements fit together. No. 98 C 2108, 1999 WL 965496, at *7 (N.D. Ill. Sept. 30, 1999). In addition, the letter urgently demanded "immediate payment," unlike the letters in the instant case which spoke of Plaintiffs' "continued refusal" to pay, but did not convey the same sense of urgency that a demand for immediate payment would. The Seventh Circuit cases in which the court found the collection letters confusing as a matter of law also involved specific demands for "immediate payment" or demands for payment

---

[2]A letter cannot be "ambiguous enough" to survive summary judgment without extrinsic evidence: the Seventh Circuit has held that a letter that is not confusing as a matter of law cannot survive summary judgment without extrinsic evidence. *See, e.g., Pettit*, 211 F.3d at 1061-62; *Johnson*, 169 F.3d at 1060. *See also* discussion *supra* at Section III. A. Extrinsic evidence is necessary to demonstrate this ambiguity unless the ambiguity is evident on the face of the dunning letters, and thus confusing as a matter of law. The Court thus disagrees with *Allen v. NCO Fin. Sys., Inc.*, No. 01 C 3992, 2002 WL 1291791, at *11 (N.D. Ill. June 11, 2002).

within a certain number of days before the thirty-day period expired. These demands were also juxtaposed, in the same letter, with the thirty-day statutory notice requirement. *See Avila*, 84 F.3d at 225 (letter confusing as a matter of law where it demanded payment within ten days); *Chauncey*, 118 F.3d at 518 (letter confusing as a matter of law where it demanded payment within thirty days). *See also Matthews v. First Revenue Assurance, L.L.C.*, No. 00 C 3711, 2001 WL 864272 (N.D. Ill. July 31, 2001) (letter requesting debtor arrange for payment "today" held confusing as a matter of law).

The rest of Plaintiffs' cases are procedurally inapposite. While the instant case arises on Equifax's motion for summary judgment, most of the cases cited by Plaintiffs deal with motions to dismiss, where the standard is "failure to state a claim," rather than summary judgment's "no genuine issue of material fact." In *Johnson* and *Walker*, the Seventh Circuit reversed the district court's grant of the debt collectors' motions to dismiss, holding that the letters – which included urgent language demanding "prompt payment" and "immediate collection" – could possibly confuse the unsophisticated consumer, but the court did not find the letters confusing as a matter of law. *Johnson*, 169 F.3d at 1060; *Walker*, 200 F.3d at 502. In fact, in *Johnson*, the Seventh Circuit stated that "if all Plaintiffs have to go on is the language of these letters, they must lose in the end," indicating the court's opinion that the letters were not confusing as a matter of law. *Johnson*, 169 F.3d at 1060. Similarly, in *Walker*, the Seventh Circuit reversed the district court's grant of the debt collectors' motion to dismiss and held that the confusion issue was a matter of fact, despite the urgent language of the letter. *Walker*, 200 F.3d at 502. *See also Seplak v. IMBS, Inc.*, No. 98 C 5973, 1999 WL 104730, at *3 (N.D. Ill. Feb. 23, 1999) (denying debt collector's motion to dismiss because language in dunning letters may confuse unsophisticated consumers, but not making

determination that letters were confusing as a matter of law). Thus, these motion to dismiss cases do not help Plaintiffs' claim that the letters at issue are confusing as a matter of law.

Moreover, Plaintiffs have not shown a violation of § 1692g through their claim that Equifax implied that the thirty-day time period expired by stating that the dishonored check was written "nearly five weeks ago." Even though the Court previously held that this could potentially mislead an unsophisticated consumer, Plaintiffs have not shown that it is confusing as a matter of law, and they have not provided extrinsic evidence of this. Furthermore, although Plaintiffs claim that Equifax failed to explain how Plaintiffs' validation rights fit in with Equifax's follow-up letters, Equifax did use the *Bartlett* safe harbor language in its initial letter to Plaintiffs, in an apparent attempt to avoid such confusion. Even if such safe harbor language did not provide sufficient explanation to Plaintiffs, the Seventh Circuit has held that when explanatory language is missing, a factual question remains. *Johnson*, 169 F.3d at 1060. Therefore, Plaintiffs did not show confusion as a matter of law on these grounds either, and without extrinsic evidence, Plaintiffs cannot survive summary judgment on this Count.

### C. Count II: Section 1692e of the FDCPA

Plaintiffs also maintain that Equifax violated § 1692e by misrepresenting the facts to imply that the debt had not yet been referred to a debt collector by stating that the debt had not yet been referred to a collection agency. The Seventh Circuit has held that the "unsophisticated consumer" standard, which applies to § 1692g "confusion" claims, also applies to § 1692e claims. *Gammon*, 27 F.3d at 1257. Plaintiffs argue that the lack of extrinsic evidence of Equifax's alleged misrepresentation should not be fatal to their claim because in *Durkin 2001*, the Court held that Plaintiffs' assertion with regard to this alleged misrepresentation was "an issue best left for the jury

12

to resolve." *Durkin 2001* at *12. The Court's holding, however, was premised on the assumption that Plaintiffs would present evidence to show that an issue of fact indeed existed. At that time, Plaintiffs were expected to at least present an expert witness. In 2003, however, the Court barred Plaintiffs' expert for not meeting the *Daubert* standards for expert testimony. Because Plaintiffs have not proffered any extrinsic evidence to show that the class of unsophisticated consumers would be misled, Plaintiffs' claims cannot survive. *See also* discussion *supra*, at Section III. A.

### D. Count III: Section 1692f of the FDCPA

Plaintiffs also argue that Equifax violated § 1692f of the FDCPA when it included a toll-free number in its letter without explaining that debtors must challenge the debt in writing. Plaintiffs assert that this in an "unfair practice," and that the evidentiary standard in "confusion" claims, which requires extrinsic evidence, does not apply. The Seventh Circuit disagrees with Plaintiffs. In *Turner v. J.V.D.B. & Assocs., Inc.*, the Seventh Circuit explicitly held that the "unsophisticated consumer test applies to § 1692f as well." 330 F.3d 991, 997 (7th Cir. 2003) (citing *Gammon*, 27 F.3d at 1257 (holding that unsophisticated consumer standard applied to claims under § 1692e)).³ Therefore, Plaintiffs' attempts to couch this alleged violation in § 1692f terms does not avoid the need for them to provide extrinsic evidence, and Plaintiffs have provided no proof that this claim could be confusing as a matter of law. *See* discussion *supra*, at Section III. A. Accordingly, Plaintiffs' failure to provide extrinsic evidence is fatal to their claims.

---

³*See also Seplak*, 1999 WL 104730, at **5, 17 (holding that "the telephone reference in the letters could be found to be confusing to an unsophisticated consumer" who might "mistakenly allow thirty days to pass without producing the written notification necessary to obtain verification of the debt.")

## IV. CONCLUSION

Thus, as the Court held in *Durkin 2001*, "it cannot be said that a violation exists on the face of these collection letters," and, unlike *Bartlett*, *Chauncey*, and *Avila*, Plaintiffs cannot avoid the requirement of producing extrinsic evidence to prove that Equifax violated the FDCPA. At the end of discovery, Plaintiffs have provided no extrinsic evidence to support their claims for violations of the FDCPA; rather, they have opted to rely solely on Equifax's letters and Plaintiffs' own self-serving testimony. Therefore, Plaintiffs have presented no genuine issue of material fact as a matter of law, and Equifax's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated: 3/31/04

William J. Hibbler, District Judge